IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin Mutual Insurance Company, | ) ) ) | CASE NO.: _____ |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| | ) | **COMPLAINT** |
| SIGNAL 88, LLC., a Delaware Limited Liability Company, SIGNAL 88 FRANCHISE GROUP, INC., a Delaware Corporation, H & C SECURITY, INC., d/b/a GOLD COAST SIGNAL 88 SECURITY, a California corporation, SIG 88 OC, LLC., a California Limited Liability Company, SIGNAL 88 SECURITY OF ATLANTA GA, INC., a Georgia corporation. | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**COMES NOW**, Plaintiff, Liberty Mutual Fire Insurance Company, by and through its counsel of record, Engles, Ketcham, Olson & Keith, P.C., and for its Complaint states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), is and was at all times relevant a mutual insurance company, organized and existing under the laws of Wisconsin.

2. Defendant, Signal 88, LLC., is and was a Delaware Limited Liability Company, whose members are, upon information and belief, domiciled in Nebraska.

3. Defendant, Signal 88 Franchise Group, Inc., was a Nebraska corporation during the relevant period and is currently a Delaware corporation with its principal place of business in Nebraska.

1

4. Defendant, H & C Security, Inc., d/b/a Gold Coast Signal 88 Security is and was a California corporation.

5. Defendant, Sig 88 OC, LLC., is and was a California Limited Liability Company whose members are, upon information and belief, domiciled in California.

6. Defendant, Signal 88 Security of Atlanta GA, Inc., is and was a Georgia corporation.

7. The amount in controversy between Plaintiff and each Defendant exceeds $75,000.

8. This Court has original jurisdiction over this matter under federal diversity jurisdiction, 28 U.S.C. § 1332, which provides, in relevant part, that:

> "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States."

28 U.S.C. § 1332(a)(1).

## GENERAL ALLEGATIONS

9. Defendants, Signal 88, LLC., and Signal 88 Franchise Group, Inc., (the "Signal 88 Defendants"), operate a security services franchise business.

10. The Signal 88 Defendants' business activities include offering and supporting Signal 88 franchises, through the provision of training, system software, uniforms, trademarks, standard equipment, technical assistance, sales and management assistance, and methods for recordkeeping.

11. The Signal 88 Defendants have developed a comprehensive system for opening and operating security service businesses that specialize in security patrols, surveillance, consulting, executive protection details, personal safety training, risk assessment and avoidance.

12. Upon information and belief, the majority of the Signal 88 Defendants' revenue earned during the relevant period was associated with their franchise operations.

13. The individual franchisees of the Signal 88 Defendants, including Defendants, H & C Security, Inc., d/b/a Gold Coast Signal 88 Security, ("H&C"), Sig 88 OC, LLC., ("OC"), Signal 88 Security of Atlanta Ga, Inc., ("ATL"), must sign a franchise agreement with the

2

Signal 88 Defendants before operating as a Signal 88 Defendant franchise (the "franchise agreement").

14. Upon information and belief, the franchise agreement requires the franchisee to adhere to a rigorous methodology for the performance of security services, which is set forth in a corporate handbook and controls the manner and means of the franchisees' daily operations.

15. Upon information and belief, the Signal 88 Defendants, through the franchise agreement, control the franchisees' selection of and relationship with third-party vendors who offer goods or services to the franchisee, including but not limited to a franchisees' insurance carrier.

16. Upon information and belief, the franchise agreement requires a prospective franchisee to, *inter alia*, purchase general liability, auto, and workers compensation insurance.

17. Upon information and belief, the franchise agreement requires the prospective franchisee to enter into an insurance agreement that covers the Signal 88 Defendants as additional insureds and waives any right of subrogation in the Signal 88 Defendants' favor.

18. Upon information and belief, the franchise agreement requires the Signal 88 Defendants' approval of a prospective franchisee's choice of insurance carrier and strongly encourages the prospective franchisee to participate in the insurance policy programs or bundles of which the Signal 88 Defendants offer through a preferred carrier.

19. Upon information and belief, the franchise agreement requires the franchisee or prospective franchisee to provide the franchisor with regular proof of insurance coverage.

20. Upon information and belief, in the event that a franchisee fails to maintain required insurance, the franchise agreement gives the Signal 88 Defendants the right and authority to immediately procure the required insurance on behalf of the franchisee and charge the franchisee for the cost of that insurance and additional fees.

21. Upon information and belief, all relevant franchise agreements were negotiated and executed in Nebraska.

22. Upon information and belief, the franchise agreement includes a choice of law provision that establishes the laws of the state of Nebraska as governing law over the franchise agreement.

3

23. Upon information and belief, the franchise agreement includes a choice of forum provision that establishes the state or federal court nearest to Douglas County, Nebraska, as the forum with exclusive jurisdiction over all claims arising out of the relationship between the Signal 88 Defendants and the franchisee.

24. Upon information and belief, the Signal 88 Defendants, through the franchise agreement and other communications, require the franchisee to attend regular training at the Signal 88 Defendants' facilities in Omaha, Nebraska.

25. Upon information and belief, all franchisees of the Signal 88 Defendants, including Defendants, H&C, OC, and ATL, signed a franchise agreement as described in paragraphs 14 through 24, *supra*.

26. In 2016, the Signal 88 Defendants, through their insurance broker, entered negotiations with Liberty Mutual in the state of Nebraska to develop a corporate insurance program comprised of various Liberty Mutual insurance products including but not limited to general liability, auto, and workers compensation insurance policies, that would cover the Signal 88 Defendants, their several franchisees, prospective franchisees, subsidiaries and/or affiliates, subject to the terms and conditions of said policies.

27. Pursuant to the requirements of the Signal 88 Defendants, Liberty Mutual and the Signal 88 Defendants developed a competitively priced and comprehensive Corporate Insurance Program for the Signal 88 Defendants and their several, franchisees, prospective franchisees, subsidiaries and/or affiliates which included general liability, auto, and workers compensation insurance (the "Signal 88 Corporate Insurance Program").

28. Upon information and belief, Signal 88 designated Liberty Mutual as a preferred vendor/carrier and offered their several franchisees, prospective franchisees, subsidiaries and/or affiliates access to the Signal 88 Corporate Insurance Program.

29. Upon information and belief, during the relevant period, the Signal 88 Defendants provided their several franchisees, and prospective franchisees with presentations and materials from Liberty Mutual, describing the Signal 88 Corporate Insurance Program (the "marketing materials").

30. Upon information and belief, the marketing materials state that the Signal 88 Defendants "partnered with Liberty Mutual to create a Corporate Insurance Program" featuring

4

"general liability, business auto, workers compensation, and umbrella liability" insurance.

31. Upon information and belief, the marketing materials state that the insurance product provides a "General Liability rate at 0.7% annual payroll, Business Auto at $1,740 per vehicle annually, and Workers Compensation variable by state."

32. Upon information and belief, the marketing materials further state the Signal 88 Corporate Insurance Program "leverages its purchasing power against all available scheduled credits and rating structures within the [individual] state system" to provide a competitive workers compensation insurance rate in accordance with various state laws governing workers compensation.

33. Upon information and belief, the marketing materials state that the Signal 88 Corporate Insurance Program "includes continuous risk management services," where Liberty Mutual would provide the Signal 88 Defendants and their franchisees the opportunity to receive "periodic industry specific information and recommendations."

34. Upon information and belief, the marketing materials state that, "under the [Signal 88 Corporate Insurance Program], franchisees pay monthly installments on annual premiums over $150, the premiums due on the 15th of the month."

35. The Signal 88 Corporate Insurance Program was priced below market value for similar individual comprehensive insurance products and what Liberty Mutual would generally charge an individual entity for the services included in the Signal 88 Corporate Insurance Program.

36. Upon information and belief, most, if not all Signal 88 franchisees and prospective franchisees, including Defendants, H&C, OC, and ATL, participated in the Signal 88 Corporate Insurance Program.

37. The Signal 88 Defendants and their several franchisees, prospective franchisees, subsidiaries and/or affiliates would not have had access to the services of Liberty Mutual, as offered under the Signal 88 Corporate Insurance Program, but for their execution of the franchise agreements and status as a Signal 88 franchisor, franchisee, prospective franchisee, subsidiary and/or affiliate.

38. From 2016 through 2019, Liberty Mutual insured the Signal 88 Defendants and their several, franchisees, prospective franchisees, subsidiaries and/or affiliates, including Defendants, H&C, OC, and ATL, pursuant to policy agreements issued in accordance with the Signal 88 Corporate Insurance Program and the requirements of applicable laws, as described in Exhibit 1 and the individual Counts that follow. *See* Exhibits 1 and 3.

39. As part of the Signal 88 Corporate Insurance Program, the Signal 88 Defendants purchased and Liberty Mutual issued general liability insurance policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028, which, subject to the terms and conditions of each policy, included the Signal 88 Defendants and their several, franchisees, prospective franchisees, subsidiaries and/or affiliates. *See* Exhibits 1 and 2.

40. Policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028 were insurance agreements between Liberty Mutual and the Signal 88 Defendants.

41. In furtherance of the general liability insurance coverage Liberty Mutual provided the signal 88 Defendants under policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028, Liberty Mutual would regularly provide the Signal 88 Defendants with detailed invoices for amounts due under those policies, which itemized the amounts owed by franchise location for services Liberty Mutual provided under those policies.

42. Upon information and belief, the Signal 88 Defendants, after receiving an invoice from Liberty Mutual for amounts owed under policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028, notified the individual, franchisee, prospective franchisee, subsidiary and/or affiliate of that parties' portion of the total amount due under the relevant policy as set forth in the above-referenced Liberty Mutual invoice.

43. Upon information and belief, the Signal 88 Defendants required their franchisees, prospective franchisees, subsidiaries and/or affiliates to pay their respective portion of the total amount due under policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028, as set forth in the above-referenced Liberty Mutual invoices.

44. During the relevant period, the Signal 88 Defendants and several franchisees, including Defendant, ATL, submitted claims under their policy agreements with Liberty Mutual, which Liberty Mutual, subject to the terms and conditions of the applicable policy, paid.

6

45. The Signal 88 Defendants and several Signal 88 franchisees, including Defendants, H&C, OC, and ATL, failed to make payments owed to Liberty Mutual in breach of their respective policies with Liberty Mutual under the Signal 88 Corporate Insurance Program.

46. As a result of the Signal 88 Defendants and Signal 88 franchisees' breach of certain policy agreements with Liberty Mutual, which were provided under the Signal 88 Corporate Insurance Program, Liberty Mutual suffered losses in excess of $1,270,095.07.

## CAUSES OF ACTION
### COUNT I.
### Breach of Contract (H & C Security, Inc.)

47. Liberty Mutual restates and realleges the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

48. Defendant, H & C Security, Inc., d/b/a Gold Coast Signal 88 Security, ("H&C"), participated in the Signal 88 Corporate Insurance Program.

49. Through the Signal 88 Corporate Insurance Program, Defendant, H&C, obtained the following policies from Liberty Mutual: TB2-641444766-787, TB2-641-444766788, WC2-641-444766-617, WC2-641-444766-618, and WC2-641-444766-619. *See* Exhibit 1.

50. Pursuant to terms of the policies, H&C was obligated to pay Liberty Mutual insurance premiums and deductibles in exchange for the specific coverages afforded to H&C as set forth in the policies, and subject to the terms and conditions of said policies.

51. Upon information and belief, pursuant to the terms of the franchise agreement between H&C and the Signal 88 Defendants, H&C was required to name the Signal 88 Defendants as additional insureds under certain policies H&C purchased from Liberty Mutual.

52. Defendant, H&C, failed to make payments totaling $82,989.86 in amounts owed to Liberty Mutual for insurance afforded under the above-referenced policies, which payments were due in full beginning May 22, 2018.

53. Defendant, H&C, owes Liberty Mutual $82,989.86, plus interest at the rate of 12% per

annum pursuant to Neb. Rev. Stat. § 45-104.

54. Due to Defendant, H&C's, breach of certain policy agreements with Liberty Mutual which H&C obtained through participation in the Signal 88 corporate insurance program, Liberty Mutual has suffered damages in excess of $82,989.86.

55. Liberty Mutual is entitled to judgment against Defendant, H&C, as follows:

    a. For the principal amount of $82,989.86 plus interest at the rate of 12% per annum from and after May 22, 2018;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT II.

### Account Stated (H & C Security, Inc.)

56. Liberty Mutual realleges and restates the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57. Liberty Mutual regularly made and rendered to Defendant, H&C, accurate invoices and/or statements of account reflecting the transactions between Liberty Mutual and H&C.

58. Defendant, H&C, received and accepted the above-referenced invoices and/or statements of account without objection to any item thereof within a reasonable period of time.

59. In furtherance of the insurance coverage Liberty Mutual provided Defendant, H&C, a full, just, and true account was made and stated between Liberty Mutual and H&C, which showed a balance of $82,989.86 due and owing to Liberty Mutual from H&C over and above all sums received from H&C and for which H&C is entitled to credit.

60. Although duly demanded, no part or portion thereof has been paid.

61. Liberty Mutual is entitled to judgment against Defendant, H&C, as follows:

    a. For the principal amount of $82,989.86, plus interest at the rate of 12% per annum from and after May 22, 2018;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT III.

### Breach of Contract (Sig 88 OC, LLC.)

62. Liberty Mutual restates and realleges the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63. Defendant, SIG 88 OC, LLC., ("OC"), participated in the Signal 88 Corporate Insurance Program.

64. Through the Signal 88 Corporate Insurance Program, Defendant, OC, obtained the following policies from Liberty Mutual: TB2-641-444766-858, WC2-641-444766-286 WC2-641-444766-287, and WC2-641-444766-288. *See* Exhibit 1.

65. Pursuant to terms of the policies, OC was obligated to pay Liberty Mutual insurance premiums and deductibles in exchange for the specific coverages afforded to OC as set forth in the policies, and subject to the terms and conditions of said policies.

66. Upon information and belief, pursuant to the terms of the franchise agreement between OC and the Signal 88 Defendants, OC was required to name the Signal 88 Defendants as additional insureds under certain policies OC purchased from Liberty Mutual.

67. Defendant, OC, failed to make payments totaling $113,727.48 in amounts owed to Liberty Mutual for insurance afforded under the above-referenced policies, which payments were due in full beginning August 17, 2017.

68. Defendant, OC, owes Liberty Mutual $113,727.48, plus interest at the rate of 12% per annum pursuant to Neb. Rev. Stat. § 45-104.

69. Due to Defendant, OC's, breach of certain policy agreements with Liberty Mutual which OC obtained through participation in the Signal 88 corporate insurance program, Liberty Mutual has suffered damages in excess of $113,727.48.

70. Liberty Mutual is entitled to judgment against Defendant, OC, as follows:

    a. For the principal amount of $113,727.48 plus interest at the rate of 12% per annum from and after August 17, 2017;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

9

## COUNT IV.

### Account Stated (Sig 88 OC, LLC.)

71. Liberty Mutual realleges and restates the allegations set forth in paragraphs 1 through 70 as though fully set forth herein.

72. Liberty Mutual regularly made and rendered to Defendant, OC, accurate invoices and/or statements of account reflecting the transactions between Liberty Mutual and OC.

73. Defendant, OC, received and accepted the above-referenced invoices and/or statements of account without objection to any item thereof within a reasonable period of time.

74. In furtherance of the insurance coverage Liberty Mutual provided Defendant, OC, a full, just, and true account was made and stated between Liberty Mutual and OC, which showed a balance of $113,727.48 due and owing to Liberty Mutual from OC over and above all sums received from OC and for which OC is entitled to credit.

75. Although duly demanded, no part or portion thereof has been paid.

76. Liberty Mutual is entitled to judgment against Defendant, OC, as follows:

    a. For the principal amount of $113,727.48, plus interest at the rate of 12% per annum from and after August 17, 2017;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT V.

### Breach of Contract (Signal 88 Security of Atlanta Ga, Inc.)

77. Liberty Mutual restates and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

78. Defendant, Signal 88 Security of Atlanta Ga, Inc., ("ATL"), participated in the Signal 88 Corporate Insurance Program.

79. Through the Signal 88 Corporate Insurance Program, Defendant, ATL, obtained the following policies from Liberty Mutual: WC2-641-444766-687 and WC2-641-445229-038. *See* Exhibit 1.

80. Pursuant to terms of the policies, ATL was obligated to pay Liberty Mutual insurance premiums and deductibles in exchange for the specific coverages afforded to ATL as set

forth in the policies, and subject to the terms and conditions of said policies.

81. Upon information and belief, pursuant to the terms of the franchise agreement between ATL and the Signal 88 Defendants, ATL was required to name the Signal 88 Defendants as additional insureds under certain policies ATL purchased from Liberty Mutual.

82. Defendant, ATL, failed to make payments totaling $77,480.75 in amounts owed to Liberty Mutual for insurance afforded under the above-referenced policies, which payments were due in full beginning September 17, 2018.

83. Defendant, ATL, owes Liberty Mutual $77,480.75, plus interest at the rate of 12% per annum pursuant to Neb. Rev. Stat. § 45-104.

84. Due to Defendant, ATL's, breach of certain policy agreements with Liberty Mutual which ATL obtained through participation in the Signal 88 corporate insurance program, Liberty Mutual has suffered damages in excess of $77,480.75.

85. Liberty Mutual is entitled to judgment against Defendant, ATL, as follows:

    a. For the principal amount of $77,480.75 plus interest at the rate of 12% per annum from and after September 17, 2018;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT VI.

### Account Stated (Signal 88 Security of Atlanta Ga, Inc.)

86. Liberty Mutual realleges and restates the allegations set forth in paragraphs 1 through 85 as though fully set forth herein.

87. Liberty Mutual regularly made and rendered to Defendant, ATL, accurate invoices and/or statements of account reflecting the transactions between Liberty Mutual and ATL.

88. Defendant, ATL, received and accepted the above-referenced invoices and/or statements of account without objection to any item thereof within a reasonable period of time.

89. In furtherance of the insurance coverage Liberty Mutual provided Defendant, ATL, a full, just, and true account was made and stated between Liberty Mutual and ATL, which showed a balance of $77,480.75 due and owing to Liberty Mutual from ATL over and above all sums received from ATL and for which ATL is entitled to credit.

11

90. Although duly demanded, no part or portion thereof has been paid.

91. Liberty Mutual is entitled to judgment against Defendant, ATL, as follows:

    a. For the principal amount of $77,480.75, plus interest at the rate of 12% per annum from and after September 17, 2018;

    b. For Liberty Mutual's costs incurred herein;

    c. For pre- and post-judgment interest;

    d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT VII.

### Breach of Contract (The Signal 88 Defendants.)

92. Liberty Mutual restates and realleges the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

93. Defendants, Signal 88, LLC., and Signal 88 Franchise Group, Inc. (collectively "the Signal 88 Defendants"), participated in the Signal 88 Corporate Insurance Program.

94. Through the Signal 88 Corporate Insurance Program, the Signal 88 Defendants obtained policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028 from Liberty Mutual, which provided general liability coverage for their franchise business, including their franchisees. *See* Exhibits 1 and 2.

95. Pursuant to terms of the policies, the Signal 88 Defendants were obligated to pay Liberty Mutual insurance premiums and deductibles in exchange for the specific coverages afforded to the Signal 88 Defendants and their franchisees as set forth in the above-referenced policies, and subject to the terms and conditions of said policies.

96. The Signal 88 Defendants, failed to make payments totaling $402,179.38 in amounts owed to Liberty Mutual for insurance afforded under the above-referenced policies, which payments were due in full beginning September 1, 2017. *See* Exhibit 1.

97. The Signal 88 Defendants owe Liberty Mutual $402,179.38, plus interest at the rate of 12% per annum pursuant to Neb. Rev. Stat. § 45-104.

98. Due to the Signal 88 Defendants' breach of their policy agreements with Liberty Mutual which the Signal 88 Defendants obtained through participation in the Signal 88 corporate insurance program, Liberty Mutual has suffered damages in excess of $402,179.38.

99. Liberty Mutual is entitled to judgment against the Signal 88 Defendants, as follows:

a. For the principal amount of $402,179.38 plus interest at the rate of 12% per annum from and after September 1, 2017;

b. For Liberty Mutual's costs incurred herein;

c. For pre- and post-judgment interest;

d. For such further and additional relief as the Court deems just, fair, and equitable.

## COUNT VIII.

### Account Stated (The Signal 88 Defendants)

100. Liberty Mutual realleges and restates the allegations set forth in paragraphs 1 through 99 as though fully set forth herein.

101. Liberty Mutual regularly made and rendered to the Signal 88 Defendants accurate invoices and/or statements of account reflecting the transactions between Liberty Mutual and the Signal 88 Defendants.

102. The Signal 88 Defendants received and accepted the above-referenced invoices and/or statements of account without objection to any item thereof within a reasonable period of time.

103. In furtherance of the insurance coverage Liberty Mutual provided the Signal 88 Defendants a full, just, and true account was made and stated between Liberty Mutual and the Signal 88 Defendants, which showed a balance of $402,179.38 due and owing to Liberty Mutual from the Signal 88 Defendants over and above all sums received from the Signal 88 Defendants and for which the Signal 88 Defendants are entitled to credit.

104. Although duly demanded, no part or portion thereof has been paid.

105. Liberty Mutual is entitled to judgment against the Signal 88 Defendants as follows:

a. For the principal amount of $402,179.38, plus interest at the rate of 12% per annum from and after September 1, 2017;

b. For Liberty Mutual's costs incurred herein;

c. For pre- and post-judgment interest;

d. For such further and additional relief as the Court deems just, fair, and equitable.

13

## COUNT IX.

### Unjust Enrichment/Quantum Meruit (The Signal 88 Defendants)

106.    Liberty Mutual restates and realleges the allegations set forth in paragraphs 1 through 105 as though fully set forth herein.

107.    During the relevant period, franchisees of the Signal 88 Defendants obtained certain individual insurance policies from Liberty Mutual through the Signal 88 Corporate Insurance Program, including general liability, workers compensation, and auto policies (the "individual policies"). *See* Exhibit 3.

108.    Upon information and belief, the franchise agreements between the Signal 88 Defendants and their franchisees, and/or the laws of the individual states where the Signal 88 franchisees reside, required the purchase and maintenance of the individual policies for those franchisees to operate their respective businesses.

109.    Upon information and belief, the franchise agreements between the Signal 88 franchisees and the Signal 88 Defendants required the Signal 88 franchisees to name the Signal 88 Defendants as additional insureds under the individual policies.

110.    The Signal 88 Defendants were not in privity with Liberty Mutual under the individual policies.

111.    The Signal 88 Defendants were named as additional insureds under several of the individual policies.

112.    Pursuant to terms of the individual policies, the Signal 88 Defendants' franchisees were obligated to pay Liberty Mutual insurance premiums and deductibles in exchange for the specific coverages afforded to those franchisees as set forth in their respective policies.

113.    As of the filing date of this Complaint, several of the Signal 88 Defendants' franchisees have failed to make payments for amounts owed to Liberty Mutual for insurance afforded under the individual policies.

114.    As a result of the franchisees' breach of the individual policies, Liberty Mutual has suffered losses totaling over $643,862.44. *See* Exhibit 3.

115.    Upon information and belief, a substantial portion of the Signal 88 Defendants' revenue during the relevant period was earned through the operations of their franchisees.

14

116.     The Signal 88 Defendants received the benefit of reduced risk in the operations of their franchise business at the expense of Liberty Mutual.

117.     The Signal 88 Defendants received the benefit of their franchisees' ability to earn revenue through compliance with applicable state laws at the expense of Liberty Mutual.

118.     The Signal 88 Defendants received the direct benefit of coverage as additional insureds under certain policies referenced above, at the expense of Liberty Mutual.

119.     Liberty Mutual demands restitution from the Signal 88 Defendants as follows:

   a.   For amounts due to Liberty Mutual pursuant to all policies issued under the Signal 88 Corporate Insurance Program, except policies TB2-641-444766-026, TB2-641-444766-027, and TB2-641-444766-028, plus interest from and after August 17, 2018;

   b.   For Liberty Mutual's costs incurred herein;

   c.   For pre- and post-judgment interest;

   d.   For such further and additional relief as the Court deems just, fair, and equitable.

## JURY DEMAND

120.     Pursuant to Fed. R. Civ. Pro. 38, Plaintiff respectfully demands a trial by jury on all issues so triable.

**WHEREFORE**, Liberty Mutual Fire Insurance Company respectfully requests the Court enter judgment in its favor on all Counts alleged and for such other and further relief as the Court deems appropriate.

DATED August 16, 2022.

LIBERTY   MUTUAL   FIRE   INSURANCE COMPANY, Plaintiff

By:/s/ Michael L. Moran
    Michael L. Moran, #24042
    ENGLES, KETCHAM, OLSON & KEITH, P.C.
    1700 Farnam Street
    1350 Woodmen Tower
    Omaha, Nebraska 68102
    (402) 348-0900  Fax (402) 348-0904
    mmoran@ekoklaw.com

15

## CERTIFICATE OF SERVICE

Service will be made on Defendants with summons to be issued by the Clerk according to the Federal Rules of Civil Procedure.

<u>        /s/Michael L. Moran        </u>